**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **Plaintiff,** | |
| **v.** | **Case No. 21-20060-JAR** |
| **DANIEL AUBREY JENKINS,** | |
| **Defendant.** | |

---

**MOTION TO DISMISS AND FOR A BILL OF PARTICULARS**

---

Comes now the defendant, Daniel Aubrey Jenkins, by and through his attorney, Mark Thomason, and moves this Court pursuant to Fed.R.Crim.P. 12(b)(2) to dismiss this case because the Government's invocation of the forced labor statute, 18 U.S.C. § 1589, to prosecute what is essentially alleged to have been child abuse, constitutes the impermissible federalization of a state crime.

Second, pursuant to Fed.R.Crim.P. 12(b)(3)(B) and 18 U.S.C. § 3282 Jenkins moves this Court to dismiss Count One because the Government's Indictment seeks to prosecute Jenkins for alleged crimes committed outside the limitations period. The substantive offense alleged in Counts Five and Seven should also be dismissed because there is a significant risk that, as currently charged, a jury would convict Jenkins based solely on conduct falling outside the limitations period of 18 U.S.C.§ 3298.

Third, Jenkins moves under Rule 12(b)(3)(B)(iii), for a Bill of Particulars defining the facts and circumstances on which the Government will rely at trial to prove the charges against him, namely that he held "official status within" the United Nations of Islam ("UNOI"), as alleged in

the Indictment ("Ind.") at ¶ 9; that he participated in decision-making meetings and engaged in specific acts of abuse against minor victims 2, 5, and 9 (Ind. at ¶¶ 37, 42, 43, 46, 58, and 64), and that Jenkins committed the alleged acts of abuse in order to obtain the forced labor of the alleged victims. The requested information is needed so that Mr. Jenkins can understand the Government's theory of the case and prepare for trial.

Finally, because Jenkins cannot adequately contest the charges until the requested particulars are received, Jenkins respectfully reserves the right to make additional motions as may become appropriate based on information received by from the Government whether in its response to these motions, in the requested Bill of Particulars (if granted by the Court), or in the event of future discovery productions.

### STATEMENT OF FACTS

According to the Indictment, UNOI was begun in the late 1990s and incorporated in 1999. Ind. at ¶¶ 2-3. Founded by Royall Jenkins, it was a religious organization with hundreds of members who joined voluntarily and raised their families according to its principles. See, generally, Ind. at ¶¶ 1-14. More than just a religious community, UNOI represented a way of life. UNOI-run businesses were staffed entirely by UNOI volunteers, some of whom were children. Ind. at ¶ 10-11. Parents freely agreed to have their children attend a UNOI school and work in UNOI-run businesses. Ind. at ¶ 12.

The Indictment filed on October 20, 2021, charges Jenkins and others with participation in a Conspiracy to Commit Forced Labor (violation of 18 U.S.C. § 371) "[o]n or about October 28, 2000, and continuing through November 30, 2012," alleging that, in the course of their leadership of UNOI, the defendants conspired to "provide and obtain the labor and services of one or more persons by threats of serious harm to, and physical restraint against, that person and another person;

by means of any scheme, plan, and pattern intended to cause the person to believe that, if the person did not perform such labor and services, that person and another person would suffer serious harm and physical restraint; and by means of the abuse and threatened abuse of law and the legal process, in violation of 18 U.S.C. § 1589." Ind. at ¶ 16 (Count One).

In support of the conspiracy charge, the Government alleges, *inter alia*, that, "the defendants primarily relied on the labor and services of young victims, many of whom were minors, to benefit financially" (Ind. at ¶ 19); exercised control over the UNOI members' activities of daily life including where they lived, what they ate, how they showered, how they dressed, what toiletries they used, what they read, and even what words they were allowed to use (Ind. at ¶¶ 20-27); and required them to work in UNOI-owned businesses (Ind. at ¶ 30). Victims would be punished for infractions of the rules, for failing to perform work "duty" properly, or for "innumerable other offenses, such as stealing food." Ind. at ¶ 32. Punishments included "withholding food, silence, public humiliation, extra 'duty,' and physical abuse." Ind. at ¶ 33.

Mr. Daniel Aubrey Jenkins was moved to the farm in Salisbury, Maryland in the spring of 2006. On April 1, 2007, Daniel Jenkins was removed from UNOI and withdrew from the organization on that date and did not return to the UNOI. The statute of limitations period should not extend past April 1, 2007, as it relates to Daniel Aubrey Jenkins.

The indictment alleges that Jenkins (referred to therein as "Aubrey" to distinguish him from UNOI's founder, Royall Jenkins) committed four overt acts in furtherance of the charged conspiracy:

- Jenkins and others "used a paddle to hit Minor Victim 2" "as punishment on multiple occasions in Kansas" between October 28, 2000 and December 31, 2004 (Ind. at ¶ 37);

- Jenkins and others "participated in meetings" about where to move victims for labor and concerning disciplinary actions to be imposed on victims "such as withholding food" between October 28, 2000, and December 31, 2008 (Ind. at ¶¶ 42, 43);

- Jenkins engaged in "Fruit of Islam Beatdowns, between October 28, 2000, through December 31, 2009, "in which he physically abused male UNOI members as punishment for infractions (Ind. at ¶ 46); and

- Jenkins and others "led meetings in which they publicly chastised the victims and other individuals for violating UNOI rules" between October 28, 2000, and January 2012 (Ind. at ¶ 58).

Jenkins is additionally charged with two counts of forced labor ("knowingly provid[ing] and obtain[ing] the labor of and services of [MV-9 between October 28, 2000 and November 30, 2012, and MV-5 between January 1, 2002 and November 30, 2011] by threats of serious harm to, and physical restraint against, that person and another person; by means of any scheme, plan, and pattern intended to cause the person to believe that, if the person did not perform such labor and services, that person and another person would suffer serious harm and physical restraint; and by means of the abuse and threatened abuse of law and the legal process, . . ." in violation of 18 U.S.C. §§ 1589, 1594(a), &2. Ind. at ¶ 64 (Counts Five and Seven).

## DISCUSSION

### I.     THE INDICTMENT SHOULD BE DISMISSED BECAUSE CHILD ABUSE IS A QUINTISSENTIALLY STATE CRIME AND THE FEDERAL PROSECUTION OF JENKINS IS IMPERMISSIBLE FEDERAL OVERREACH

"In our federal system, the National Government possesses only limited powers; the States and the people retain the remainder." *Bond v. United States*, 572 U.S. 844, 854, 134 S. Ct. 2077, 2086, 189 L. Ed. 2d 1 (2014). "The States have broad authority to enact legislation for the public

good—what [the Supreme Court has] often called a 'police power.'" *Bond*, 572 U.S. at 854 (quoting *United States v. Lopez,* 514 U.S. 549, 567, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995)). "The Federal Government, by contrast, has no such authority and 'can exercise only the powers granted to it,' *McCulloch v. Maryland,* 4 Wheat. 316, 405, 4 L.Ed. 579 (1819), including the power to make all Laws which shall be necessary and proper for carrying into Execution' the enumerated powers, U.S. Const., Art. I, § 8, cl. 18." *Bond*, 572 U.S. at 854. "By denying any one government complete jurisdiction over all the concerns of public life, federalism protects the liberty of the individual from arbitrary power." *Bond*, 572 U.S. at 863 (citation omitted).

"For nearly two centuries it has been 'clear' that, lacking a police power, 'Congress cannot punish felonies generally.'" *Bond*, 572 U.S. at 854 (quoting *Cohens v. Virginia,* 6 Wheat. 264, 428, 5 L.Ed. 257 (1821)). "A criminal act committed wholly within a State 'cannot be made an offence against the United States, unless it have some relation to the execution of a power of Congress, or to some matter within the jurisdiction of the United States.'" *Bond*, 572 U.S. at 854 (quoting *United States v. Fox,* 95 U.S. 670, 672, 24 L.Ed. 538 (1878)). In recognition of this clear division, "Congress has traditionally been reluctant to define as a federal crime conduct readily denounced as criminal by the States." *United States v. Bass,* 404 U.S. 336, 349, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971). For the same reason, "the Supreme Court has shied away from reading criminal statutes as making 'traditionally local criminal conduct ... a matter for federal enforcement.'" *United States v. Toviave*, 761 F.3d 623, 627 (6th Cir. 2014) (quoting *Jones v. United States,* 529 U.S. 848, 858, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000) [quoting *Bass,* 404 U.S. at 350, 92 S.Ct. 515]).

When considering the reach of a federal statute, therefore, "it is fully appropriate to apply the background assumption that Congress normally preserves the constitutional balance between the National Government and the States." *Bond*, 572 U.S. at 862 (citation omitted).

The forced labor statute, 18 U.S.C. § 1589(a), prohibits any person from "knowingly provid[ing] or obtain[ing] the labor or services of a person by any one of, or by any combination of, the following means --

> **(1)** by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
> **(2)** by means of serious harm or threats of serious harm to that person or another person;
> **(3)** by means of the abuse or threatened abuse of law or legal process; or
> **(4)** by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint, . . .

The statute defines "abuse or threatened abuse of law or legal process" as "the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action." 18 U.S.C. § 1589(c)(1). The statute defines "serious harm" as "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." 18 U.S.C. § 1589(c)(2).

Congress passed the forced labor statute "to implement the Thirteenth Amendment against slavery or involuntary servitude." *United States v. Aman*, No. 3:19-CR-85, 2022 WL 3371320, at *6 (E.D. Va. Aug. 16, 2022) (referencing *United States v. Toviave*, 761 F.3d 623, 629 (6th Cir. 2014)). "Historically, criminal prosecutions for forced labor... have nearly always involved

employment situations and/or sexual exploitation between unrelated parties." *United States v. Aman*, No. 3:19-CR-85, 2022 WL 3371320, at *6 (E.D. Va. Aug. 16, 2022) (referencing, *e.g., Roe v. Howard*, 917 F.3d 229 (4th Cir. 2019) (affirming the district court's judgment in favor of the plaintiff, who suffered sexual abuse as a housekeeper for the defendants); *United States v. Farrell*, 563 F.3d 364 (8th Cir. 2009) (affirming convictions under the forced labor statute for defendants who recruited individuals from the Philippines to work for them in the United States and then isolated these workers and compelled their continued work by threatening physical force and arrest); *United States v. Udeozor*, 515 F.3d 260 (4th Cir. 2008) (affirming conviction under the forced labor statute for defendant who induced a fourteen-year old to move from Nigeria to the United States based on the promise of education and money, but instead compelled her work through physical, emotional, and sexual abuse)).

But "the forced labor law contains no sufficiently clear statement that it applies to . . . child abuse." *United States v. Toviave*, 761 F.3d 623, 627 (6th Cir. 2014). Child abuse is a crime in every state. *See Toviave*, 761 F.3d at 627 (referencing NDAA, *Statutory Compilation: Physical Child Abuse Penalties* (April 2013) *available at* http://www.ndaa.org/pdf/Physical% 20Child% 20Abuse% 20Penalties% 20Compilation% 202013% 20(3).pdf). "Family relations are a traditional area of state concern." *Moore v. Sims,* 442 U.S. 415, 435, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979). And "family" extends to persons standing "*in loco parentis*." *Toviave*, 761 F.3d at 626.

In *Toviave*, the Sixth Circuit reversed the defendant's conviction for forced labor. 761 F.3d at 630. In that case, the defendant brought four young relatives from Togo to live with him in the United States. He made the children complete household chores, like cooking, cleaning, and doing the laundry. He also abused the children, hitting them as punishment for "minor oversights or

violations of seemingly arbitrary rules." *Id.* at 624. But this abuse, the Sixth Circuit found, "[a]lthough . . . reprehensible," did not amount to forced labor:

> First, forcing children to do household chores cannot be forced labor without reading the statute as making most responsible American parents and guardians into federal criminals. Second, requiring a child to perform those same chores by means of child abuse does not change the nature of the work. And third, if it did, the forced labor statute would federalize the traditionally state-regulated area of child abuse.

*Id.* at 625.

In this case, as in *Toviave*, prosecution for forced labor cannot lie. The allegations of child abuse are not clearly connected to the "duty" performed by the alleged victims. While there is evidence that they may have received physical abuse, that evidence does not establish that any such abuse was inflicted in relation to the alleged acts of forced labor. By way of example, the victims are not alleging that they were beaten for refusing to work. They are claiming that beatings were received as punishments for stealing food or looking at pornography.

Further, the allegations against Jenkins do not support a charge of forced labor. The Government alleges that Jenkins and others "used a paddle to hit Minor Victim 2" "as punishment on multiple occasions in Kansas" between October 28, 2000, and December 31, 2004 (Ind. at ¶ 37), but there is no indication that this "paddling" bore any relation to work either performed or not performed by MV-2. Similarly, the Government alleges that Jenkins engaged in "Fruit of Islam Beatdowns, between October 28, 2000, through December 31, 2009, "in which he physically abused male UNOI members as punishment for infractions (Ind. at ¶ 46). But there is no assertion that these "infractions" were incurred in connection with any work performed or not performed by the alleged victims. To the extent the "members" were minors, these allegations sound in child abuse, not forced labor. They should be prosecuted in the State.

The Government also asserts that Jenkins and others "participated in meetings" about where to move victims for labor and concerning disciplinary actions to be imposed on victims "such as withholding food" between October 28, 2000, and December 31, 2008 (Ind. at ¶¶ 42, 43), and that he (again with others) "led meetings in which they publicly chastised the victims and other individuals for violating UNOI rules" between October 28, 2000, and January 2012 (Ind. at ¶ 58). But again, these allegations do not support a charge of forced labor. There is no indication that any chastisement or discipline was undertaken in relation to work performed by the alleged victims.

Finally, the two substantive counts of forced labor against Jenkins (Counts Five and Seven) against MV-9 and MV-5 quote the language of the forced labor statute without any indication of the factual basis of the allegations. As discussed below, a Bill of Particulars is warranted to enable Jenkins to defend against these charges. But, to the extent they represent the same type of physical abuse alleged in connection with the overt acts charged in Count One, the same argument applies.

Federalizing the prosecution of these acts, which amount – if proven beyond a reasonable doubt – to child abuse would upset the balance of power by transferring to the federal government the authority to prosecute a quintessential state crime. The Supreme Court instructs that this result should be avoided. *Bond*, 572 U.S. at 863 ("By denying any one government complete jurisdiction over all the concerns of public life, federalism protects the liberty of the individual from arbitrary power."). For these reasons, the case should be dismissed in its entirety.

## II.   THE CASE SHOULD BE DISMISSED ON STATUTE OF LIMITATIONS GROUNDS

"The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions." *United States v. Marion*, 404 U.S. 307, 323, 92 S. Ct. 455, 465, 30 L. Ed. 2d 468 (1971) (quoting *Toussie v. United States*, 397 U.S. 112, 114-115, 90 S.Ct. 858, 860,

25 L.Ed.2d 156 (1970)). "Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past." *Id.*

The Ex Post Facto Clause states that "[n]o ... ex post facto Law shall be passed." U.S. Const. art. I, § 9, cl. 3. The Supreme Court has interpreted this clause as prohibiting Congress from passing a law that: (1) makes an act a crime that was legal when committed; (2) makes a crime greater than it was when it was committed; (3) increases the punishment for a crime after it has been committed; or (4) deprives the accused of a legal defense that was available at the time the crime was committed. *See Collins v. Youngblood,* 497 U.S. 37, 41–42, 110 S.Ct. 2715, 2718–19, 111 L.Ed.2d 30 (1990). *See also Marks v. United States,* 430 U.S. 188, 191–92, 97 S.Ct. 990, 992–93, 51 L.Ed.2d 260 (1977) (noting that the Ex Post Facto Clause's protections have been extended to the application of judicial precedent by the courts under the Due Process Clause of the Fifth Amendment).

"A law enacted after expiration of a previously applicable limitations period violates the *Ex Post Facto* Clause when it is applied to revive a previously time-barred prosecution." *Stogner v. California*, 539 U.S. 607, 607, 123 S. Ct. 2446, 2447, 156 L. Ed. 2d 544 (2003).  If any alleged co-conspirator withdrew from the conspiracy, the statute of limitations period would begin to run on the date of the withdrawal. *See Smith v. United States,* 568 U.S. 106 (2013).

**A. Count One Should Be Dismissed Because No Overt Act that Jenkins Is Alleged to Have Committed in Furtherance of the Forced Labor Conspiracy Falls Within the Five-Year Statute of Limitations**

The federal statute of limitations for non-capital offenses provides that, "[e]xcept as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense . . . unless the indictment is found, or the information is instituted within five years next

after such offense shall have been committed. 18 U.S.C. § 3282(a). This five-year limitation applies to violations of 18 U.S.C. § 371. *See United States v. Hauck*, 980 F.2d 611, 613 (10th Cir. 1992) (quoting *United States v. Pinto,* 838 F.2d 426, 435 [10th Cir.1988[ [citing *Gruenwald v. United States,* 353 U.S. 391, 397, 77 S.Ct. 963, 970, 1 L.Ed.2d 931 (1957)]) ("To satisfy the statute of limitations, the prosecution must show that the conspiracy continued to exist five years prior to the indictment, returned on November 29, 1990, and that 'at least one overt act in furtherance of the conspiratorial agreement was performed within that period.'").

"The fact that the conspiracy began outside the limitations period will not prevent prosecution as long as at least one overt act in furtherance of the conspiracy occurred within five years of the indictment." *United States v. Qayyum*, 451 F.3d 1214, 1218 (10th Cir. 2006) (quoting *United States v. United Med. & Surgical Supply Corp.,* 989 F.2d 1390, 1398 (4th Cir.1993)). "[T]he crucial question in determining whether the statute of limitations has run is the scope of the conspiratorial agreement, for it is that which determines both the duration of the conspiracy, and whether the act relied on as an overt act may properly be regarded as in furtherance of the conspiracy." *United States v. Qayyum*, 451 F.3d 1214, 1219 (10th Cir. 2006) (citation omitted)

Here, the Indictment was filed on October 20, 2021, and alleges a conspiracy to violate the forced labor statute between October 28, 2000 – the date that 18 U.S.C. § 1589 was enacted – and continuing through November 30, 2012. However, based on the withdraw of Daniel Aubrey Jenkins on April 1, 2007, the indictment timeframe would be impossible as it relates to him. Based on the date of indictment, however, to establish the existence of the conspiracy within the limitations period, the Government must show that at least one overt act in furtherance of the conspiracy was performed within the period of October 20, 2016, and October 20, 2021. The Government has not alleged any such act as to Jenkins (or, indeed, as to any of the defendants),

and Count One therefore falls outside the limitations period. The Government alleges the following

overt acts in support of Jenkins' participation in the conspiracy:

- Jenkins and others "used a paddle to hit Minor Victim 2" "as punishment on multiple occasions in Kansas" between October 28, 2000, and December 31, 2004 (Ind. at ¶ 37);

- Jenkins and others "participated in meetings" about where to move victims for labor and concerning disciplinary actions to be imposed on victims "such as withholding food" between October 28, 2000, and December 31, 2008 (Ind. at ¶¶ 42, 43);

- Jenkins engaged in "Fruit of Islam Beatdowns, between October 28, 2000, through December 31, 2009, "in which he physically abused male UNOI members as punishment for infractions (Ind. at ¶ 46); and

- Jenkins and others "led meetings in which they publicly chastised the victims and other individuals for violating UNOI rules" between October 28, 2000, and January 2012 (Ind. at ¶ 58).

It is plain from the face of the Indictment that none are alleged to have continued into the

limitations period. Count One is facially invalid and must, therefore, be dismissed.   It should be

noted that should it be determined that 18 U.S.C. § 3298 applies to a conspiracy charge that counsel

would lodge the same arguments as raised above with the exception that the time period would be

expanded to begin on October 20, 2011.

**B.  The Substantive Forced Labor Counts Should Be Dismissed Because There Is a
Grave Danger that the Counts, As Alleged, Would Permit Jenkins to be
Convicted Based on Conduct Outside the Statute of Limitations.**

In 2006, Congress passed 18 U.S.C. § 3298, which provides in relevant part that, "No

person shall be prosecuted, tried, or punished for any" forced labor offense "unless the indictment

is found or the information is instituted not later than 10 years after the commission of the offense."

18 U.S.C. ¶ 3298 (Pub.L. 109-162, title XI, § 1182(a), Jan. 5, 2006, 119 Stat. 3126). Thus, as of January 5, 2006, the formerly applicable five-year statute of limitations for the substantive offense was doubled. To satisfy this limitations period, the Government's Indictment on Counts Five and Seven against Jenkins must assert that the forced labor offense occurred after October 20, 2011, which it does, barely. The Indictment alleges that Jenkins "knowingly provided and obtained the labor of and services" of MV-9 between October 28, 2000, and November 30, 2012, and MV-5 between January 1, 2002, and November 30, 2011, in violation of 18 U.S.C. §§ 1589, 1594(a), &2. Ind. at ¶ 64 (Counts Five and Seven).

But it is not enough for an Indictment to allege offense conduct within the limitations period. Where a continuing crime is alleged, "[a] conviction for a continuing offense straddling enactment of a statute will . . . run afoul of the Ex Post Facto clause . . . [if] it was possible for the jury . . . to convict *exclusively* on pre-enactment conduct." *United States v. Monaco,* 194 F.3d 381, 386 (2d Cir.1999). The Tenth Circuit has not yet, to the best of counsel's research, determined whether 18 U.S.C. § 1589 is a continuing offense for statute of limitations purposes. But the Government's allegations, which assert a single course of conduct as to each MV-9 and MV-5, imply that the Government will treat it as such.

Here, the danger that a jury would convict Jenkins based entirely on conduct falling outside the limitations period is plain. On Count Five, Jenkins is charged with violating the forced labor law "between October 28, 2000, and November 30, 2012." Only eleven months of the 12-year period of alleged offense conduct fall within the limitations period. On Count Seven, Jenkins is charged with violating the forced labor law "between January 1, 2002, and November 30, 2011," leaving only 33 days of a nearly 10-year timeframe within the limitations period. If the case

proceeded to trial on these allegations, there would be a grave danger that Jenkins would be convicted based only on conduct that fell outside of the 10-year limitations period.

The allegations in Counts Five and Seven are, moreover, facially implausible. It is impossible for the Government to prove that the victims in these counts were in fact minors for the duration of the charged offense conduct. Count Seven, alleges by the governments own evidence MV-5 was born June 5, 1981.   According to that the alleged MV-5 would have been 20 years old on January 1, 2002.   Counsel is unaware of a situation in which a 20-year-old is a minor for purposes of the law.   It is difficult to determine what evidence exists that shows what age MV-9 and MV-5 were at the commencement of the respective timeframes in Counts Five and Seven. But the Indictment asserts that the youngest age at which victims' "labor and services" were compelled was eight years old. Ind. at ¶ 19. Even if MV-9 was eight in 2000, he/she would have turned 18 in 2010, before the forced labor limitations period commenced on October 20, 2011.

If MV-5 was eight which he was not he was twenty in 2002, he/she would have turned 18 in 2012. But, again, eight is the youngest possible age as per the Indictment (¶ 9), and the government in its own evidence of which the Defense is currently aware that MV-5 was not 10 or 12 or even 15 in 2002, they were 20.   Moreover, the Defense is aware that there is some evidence that "victims" were not permitted to work until they turned 16, which calls the entire premise of an alleged 10- or 12-year course of conduct against individuals who cannot possibly have been minors for the entire time such as is alleged to have occurred in Counts Five and Seven into question.

Mr. Daniel Aubrey Jenkins was moved to the farm in Salisbury, Maryland in the spring of 2006.  On April 1, 2007, Daniel Jenkins was removed from UNOI and withdrew from the organization on that date and did not return to the UNOI.   The statute of limitations period

should not extend past April 1, 2007, as it relates to Daniel Aubrey Jenkins. If any alleged co-conspirator withdrew from the conspiracy, the statute of limitations period would begin to run on the date of the withdrawal. *See Smith v. United States,* 568 U.S. 106 (2013). Based on his withdrawal on April 1, 2007, it would be hard to imagine sufficient factual allegations involving Daniel Aubrey Jenkins during the relevant time period.

For all of these reasons, Counts Five and Seven should be dismissed or, in the alternative, the Government should be instructed to provide a Bill of Particulars with sufficient factual allegations to assuage these concerns.

The Defense anticipates that the Government will counter that, as the alleged victims were minors, the foregoing argument is based on a faulty premise and a more expansive statute of limitations applies. The statute of limitations pertaining to offenses against children was enacted in 1994, and provided that, "No statute of limitations that would otherwise preclude prosecution for an offense involving the sexual or physical abuse of a child under the age of 18 years shall preclude such prosecution before the child reaches the age of 25 years." 18 U.S.C. § 3283 (1994), Pub.L. 103-322, 108 Stat. 2149 (Sept. 13, 1994). In 2003, the limitations period was expanded to permit prosecution "during the life of the child." 18 U.S.C. § 3283 (2003), Pub.L. 108-21, 117 Stat. 660 (Apr. 30. 2003). In 2006, the statute was amended again. It now reads, in full, "No statute of limitations that would otherwise preclude prosecution for an offense involving the sexual or physical abuse, or kidnaping, of a child under the age of 18 years shall preclude such prosecution during the life of the child, or for ten years after the offense, whichever is longer." 18 U.S.C. § 3283 (2006).

Any argument that the forced labor charges against Jenkins should be adjudicated under this expansive statute of limitations must fail. First, it is impossible to equate forced labor with

child abuse both facially and factually. The forced labor statute prohibits "knowingly provid[ing] or obtain[ing] the labor or services of a person:

> **(1)** by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
> **(2)** by means of serious harm or threats of serious harm to that person or another person;
> **(3)** by means of the abuse or threatened abuse of law or legal process; or
> **(4)** by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint, . . ."

18 U.S.C. 1589(a).

There is no requirement in the language of the law that any victim must suffer actual abuse for a forced labor prosecution to lie. To the contrary, the statute can be violated by nothing more than a "threatened abuse of legal process" or a scheme of insinuated harm. But the statute of limitations in § 3283, by its plain language, is limited to cases of actual abuse, whether physical or sexual.

Moreover, there is no allegation in the Indictment or in the discovery that would support a charge of child abuse in connection with the alleged violation of the forced labor statute. As discussed above, the victims in this case have not alleged that they were beaten or otherwise mistreated for refusal to work. They have alleged that they were physically mistreated for violations of UNOI's conduct rules – e.g., eating food that they were not permitted or looking at pornography. This abuse, unrelated to any forced labor allegations, cannot be the basis to enlarge the limitations period for a forced labor prosecution.

Further, as discussed above, it is impossible that all of the minor victims in this case were in fact under the age of 18 for the duration of the time period alleged in the Indictment. Even if they were under 18 for some fraction of the alleged period, they would have reached 25 years of age well before the Indictment was filed in 2021. It would violate Jenkins' Ex Post Facto rights to

try him under the 2003 or the 2006 version of § 3283 because, under the 1994 version of the statute, he would have had a legal defense that the individuals in question had all reached the age of 25 years and that he could no longer be prosecuted for offenses committed against them. *See Collins*, 497 U.S. at 41-42 (an Ex Post Facto violation occurs, *inter alia*, when a change in law deprives the accused of a legal defense that was available at the time the crime was committed).

In sum, the Government did not charge this case as a child abuse case. The forced labor statute that Jenkins is accused of violating says nothing about children. The Government should not be able to benefit from a longer statute of limitations without alleging appropriate statutory charges.

### III.    IF THE COURT DOES NOT DISMISS THE INDICTMENT, A BILL OF PARTICULARS IS WARRANTED

Pursuant to Federal Rules of Criminal Procedure Rule 7(f), "[t]he court may direct the government to file a bill of particulars." A bill of particulars is appropriate if the information requested is "necessary to allow the defense to prepare its case adequately or to avoid prejudicial surprise." 1 Fed. Prac. & Crim. Proc. § 130 (4th Ed.). The defense is "not entitled to know all the *evidence* the government intends to produce, but only the *theory* of the government's case." *United States v. Dunn*, 841 F.2d 1026, 1030 (10th Cir. 1988) (emphasis in original).

Although he is not "entitled to know all the *evidence*," Jenkins is entitled to "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c). Here, on Counts Five and Seven, the substantive counts against him, the Indictment alleges that Jenkins committed two forced labor violations in language that quotes the statute but provides no hint of the evidence or even of the identities of the alleged victims that would permit Jenkins to prepare to defend himself against those charges. The only information that Jenkins has to defend against these counts is the fact that they involve two allegedly minor

victims (MV-9 and MV-5), and that the conduct in issue is alleged to have occurred of a period of approximately 12 years in each case.

To remedy this defect and to enable him to prepare for a trial, Jenkins moves the Court to instruct the Government to provide a bill of particulars detailing:

- The dates of Jenkins' involvement in UNOI, including his initial membership in UNOI, the date or timeframe he assumed a leadership role, and the date that his involvement with UNOI ceased;

- The scope of his role in any decision-making meetings;

- The particular actions Jenkins is alleged to have committed against each minor victim in furtherance of the forced labor violations alleged and the dates of each such action;

- The birth dates of the minor victims and/or their ages as of October 28, 2020, and January 1, 2022, respectively;

- The "duty" that each minor victim is alleged to have performed at Jenkins' command;

- The facts upon which the Government will rely to prove that any acts of abuse were related to work performed or not performed by the minor victims.

To the extent the Government asserts that documents or other Rule 16 evidence already produced to the Defense establish one or more of these particulars, the Government should be instructed to direct the Defense to those items with specificity.

The above-requested information is necessary to allow Mr. Jenkins to know the particulars of the charges against him so that he can prepare for trial.

## IV.   JENKINS RESPECTFULLY RESERVES THE RIGHT TO FILE ADDITIONAL MOTIONS

Jenkins respectfully reserves the right to supplement the arguments herein and to make additional pretrial motions as may become appropriate based on information received by from the Government whether in its response to these motions, in the requested Bill of Particulars (if granted by the Court), or in the event of future discovery productions.

## CONCLUSION

WHEREFORE, for the reasons set forth above, Mr. Jenkins' motion to dismiss the indictment should be granted or, in the alternative, the Government should be directed to produce a Bill of Particulars.

Respectfully submitted,

/s/ Mark A. Thomason
Mark A. Thomason #22227
Law Office of Mark Thomason, LLC
929 Walnut St Suite 101
Kansas City, MO 64106
816.229.8686 / 816.229.9494 fax
mthomasonlaw@yahoo.com
*Counsel for Defendant Daniel Aubrey Jenkins*

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of March 2023, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which sent notification of such filing to all counsel of record.

//s// Mark A. Thomason
*Counsel for Defendant Daniel Aubrey Jenkins*