## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**United States of America**,
       *Plaintiff*,

v.                                          Case No. 2:21-cr-20060-JAR-5

**Daniel Aubrey Jenkins,**
       *Defendant*.

---

### Motion for Judgment of Acquittal and Motion for New Trial

---

The evidence was insufficient as a matter of law to prove that Aubrey Jenkins committed the conspiracy charged in Count 1, and this Court should acquit him of that conspiracy under Rule 29. In the alternative, even if this Court deems the evidence sufficient for Rule 29 purposes, the evidence at the very least preponderates heavily against the verdict, and this Court should therefore grant Mr. Aubrey Jenkins a new trial in the interest of justice under Rule 33.

Before we proceed to our arguments, a clarification: Mr. Aubrey Jenkins herewith restates the *general* motion for judgment of acquittal he made at trial, both at the close of the government's case and at the close of all the evidence.[1] He further specifies that this motion generally asserts (1) the insufficiency of the

---

[1] 3508, 4992. Our trial-record citations will be to the page numbers of the redacted trial transcripts. These numbers appear in the upper right-hand corner of the transcripts, and correspond with the pdf numbers in the consolidated version of these transcripts that we will forward to the court and the government simultaneously with the filing of this motion.

government's evidence respecting all elements of the crime charged, as well as the exceptions to the statute of limitations; and (2) the sufficiency of his own evidence respecting withdrawal.

That said, the below arguments will focus specifically on the government's proof respecting whether Mr. Aubrey Jenkins knowingly agreed with any coconspirator to enter into the charged conspiracy. By making these specific arguments about the absence of a knowing agreement, Mr. Aubrey Jenkins does not intend to waive the general arguments he asserted at trial and in the above paragraph.

1. **No rational factfinder could conclude beyond a reasonable doubt that Mr. Aubrey Jenkins knowingly agreed to enter into the charged conspiracy, and this Court should acquit Mr. Aubrey Jenkins under Rule 29.**

   ### 1.1    Rule 29 and conspiracies.

   "[N]o person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense."[2] This Court thus has an "imperative duty . . . to see that all the elements of [an alleged] crime are proved, or at least that testimony is offered which justifies a jury in finding those elements."[3] The "test is not whether some evidence could have reasonably supported a guilty verdict[;]" nor is it "whether a rational jury could decide that guilt was more likely than not."[4] Rather, the beyond-a-reasonable-doubt

---

[2] *Jackson v. Virginia*, 443 U.S. 307, 316 (1979).

[3] *United States v. Rufi*, 732 F.3d 1175, 1194 (10th Cir. 2013) (quoting *Clyatt v. United States*, 197 U.S. 207, 222 (1905)).

[4] *Id.*

standard demands that the evidence "must be substantial" and raise "more than a mere suspicion of guilt."[5] The "evidence and the inferences to be drawn therefrom must be viewed in the light most favorable to the prosecution."[6] But "where the evidence, viewed in this light . . . is as consistent with innocence as it is with guilt or merely raises a suspicion of guilt, the conviction may not stand."[7]

These principles apply with special force in conspiracy cases. The Court must "be particularly vigilant when the government seeks to bring many individuals under the umbrella of a single conspiracy. The risk is that a jury will be so overwhelmed with evidence of wrongdoing by other alleged coconspirators that it will fail to

---

[5] *United States v. Rufai*, 732 F.3d 1175, 1188 (10th Cir. 2013); *see also* Kevin M. Clermont, *Staying Faithful to the Standards of Proof*, 104 Cornell L. Rev. 1457, 1482 (2019) (the standard requires "that proof of guilt be strong and that no reasonable doubt persist").

[6] *Jackson v. Virginia*, 443 U.S. at 316.

[7] *Halfen v. United States*, 324 F.2d 52, 55 (10th Cir. 1963); *United States v. Leos-Quijada*, 107 F.3d 786, 794 (10th Cir. 1997) ("the evidence supporting conviction must be substantial and must do more than raise a mere suspicion of the defendant's guilt."); *United States v. Fox*, 902 F.2d 1508, 1514 (10th Cir. 1990) (same); *United States v. Serrato*, 742 F.3d 461, 467 (10th Cir. 2014) ("Despite this deference, however, we may not uphold a conviction obtained by piling inference upon inference . . . . The evidence supporting the conviction must be substantial[.]"); *United States v. Rahseparian*, 231 F.3d 1257, 1262 (10th Cir. 2000) ("A defendant's knowledge of the purpose of the criminal conspiracy must be shown by clear, unequivocal evidence. The only evidence regarding Jack's knowledge of the mail fraud was entirely circumstantial. While we have repeatedly held that circumstantial evidence may support a jury's reasonable inference of guilty knowledge by the defendant, an inference is only reasonable where there exists a probability that the conclusion flows from the proven facts. An inference is unreasonable where the jury engaged in a degree of speculation and conjecture that renders its findings a guess or mere possibility").

differentiate among particular defendants."[8] The "government must not be allowed to use conspiracy as a tool to circumvent the fundamental principle that guilt with us remains individual and personal."[9] That's why this Court's "review of the evidence must therefore be especially meticulous."[10]

    When conducting sufficiency review, the Tenth Circuit requires the government "to show, by *clear and unequivocal evidence*" the defendant's knowledge of "the object of the conspiracy . . . and his agreement to cooperate in achieving that object."[11] The "government cannot prove a conspiracy by presenting evidence that only places the defendant in a climate of activity that reeks of something foul."[12]

---

[8] *United States v. Evans*, 970 F.2d 663, 674 (10th Cir. 1992); *United States v. Butler*, 494 F.2d 1246, 1254 (10th Cir. 1974) ("We again emphasize that, while we must review the evidence in the light most favorable to the prosecution, when the evidence so viewed fails to generate more than mere suspicion or insinuation of guilt, the conviction cannot be sustained. The standard of proof required in criminal cases is a cornerstone of constitutional due process. In a case such as this one, involving numerous defendants, multiple transactions, and varying degrees of participation, the task of sifting the evidence relating to each defendant becomes particularly difficult, and a special danger exists that the degree of proof required for conviction might be relaxed. We shall be particularly vigilant in such cases to see that such a relaxation does not occur and that conviction is not predicated upon suspicion."); *United States v. Dumas*, 688 F.2d 84 (10th Cir. 1982); *United States v. Varoz*, 740 F.2d 772, 777 (10th Cir. 1984).

[9] *Id*. (cleaned up) (quoting *Kotteakos v. United States*, 328 U.S. 750, 772, 773 (1946) ("When many conspire, they invite mass trial by their conduct. Even so, the proceedings are exceptional to our tradition and call for use of every safeguard to individualize each defendant in his relation to the mass.").

[10] *United States v. Lopez*, 576 F.2d 840, 844 (10th Cir. 1978).

[11] *United States v. Austin*, 786 F.2d at 988; *United States v. Anderson*, 981 F.2d at 1564; *United States v. Rahsparian*, 231 F.3d at 1262.

[12] *United States v. Austin*, 786 F.2d 986, 988 (10th Cir. 1986); quoting *United States v. Jackson*, 700 F.2d 181, 185 (5th Cir. 1983); *United States v. Rahseparian*, 231 F.3d

The Tenth Circuit has "repeatedly emphasized in our decisions in this area, we cannot sustain a conspiracy conviction if the evidence does no more than create a suspicion of guilt or amounts to a conviction resulting from piling inference on top of inference."[13] Instead, "mindful that the conspiracy doctrine is inherently subject to abuse," the Court must "scrupulously safeguard each defendant individually, as far as possible, from loss of identity in the mass."[14]

Over and over, our Circuit has reversed conspiracy convictions that fail that standard.[15] Those reversals were required because in a conspiracy case, "the prosecution must show that the offender acted with a specific intent to interfere with the federal rights in question", so the Court must "scrutinize the record for

---

1257, 1262 (10th Cir. 2000) *United States v. Peveto*, 881 F.2d 855, 856 (10th Cir. 1989).

[13] *United States v. Hernandez*, 509 F.3d 1290, 1295 (10th Cir. 2007); *United States v. Horn*, 946 F.2d 738, 741 (10th Cir. 1991).

[14] *United States v. Evans*, 970 F.2d 663, 668 (10th Cir. 1992) ("We must consider the issues presented for review in light of the expansive, yet somewhat elusive, body of law that governs conspiracy. In so doing, we are mindful that the conspiracy doctrine is inherently subject to abuse and that the government frequently uses conspiracy to cast a wide net that captures many players.").

[15] *United States v. Rahseparian,* 231 F.3d 1257, 1262 (10th Cir. 2000); *United States v. Austin*, 786 F.2d 986, 988 (10th Cir. 1986); *United States v. Jones*, 44 F.3d 860, 866 (10th Cir. 1995); *United States v. Riggins*, 15 F.3d 992, 994 (10th Cir. 1994); *United States v. Anderson*, 981 F.2d 1560, 1563 (10th Cir.1992); *United States v. Dickey*, 736 F.2d 571, 584 (10th Cir. 1984); *United States v. Butler*, 494 F.2d 1246, 1249 (10th Cir. 1974); *United States v. Dickey*, 736 F.2d 571, 584 (10th Cir. 1984); *United States v. McIntyre*, 836 F.2d 467 (10th Cir.1987); *United States v. Summers*, 414 F.3d 1287 (10th Cir. 2005); *United States v. Migliacco*, 34 F.3rd 1517 (10th Cir. 1994); *United States v. Caldwell*, 589 F.3d 1323, 1331 (10th Cir. 2009); *United States v. Varoz*, 740 F.2d 772, 777 (10th Cir. 1984); *United States v. Dumas*, 688 F.2d 84 (10th Cir. 1982); *United States v. Dimeck*, 24 F.3d 1239, 1247-48 (10th Cir. 1994); *United States v. Evans*, 970 F.2d 663, 668 (10th Cir. 1992); *United States v. Garcia-Rodriguez*, 93 F.4th 1162 (10th Cir. 2024).

5

evidence of such intent with special care[.]"[16] That heightened scrutiny is essential to prevent the government from using conspiracy charges to fashion "a dragnet to draw in all substantive crimes."[17]

Here, the government failed to present clear and unequivocal evidence that Aubrey knowingly entered into a criminal agreement with his charged co-conspirators. Instead, the evidence showed that Aubrey competed, not cooperated, with the alleged co-conspirators. Evidence that Aubrey held, at times, a leadership role in UNOI is insufficient to sustain his conspiracy conviction under Tenth Circuit precedent. So too concerning evidence that he associated or conversed with alleged co-conspirators. Exercising the "particular vigilan[ce]"[18] and "especially meticulous"[19] review the Tenth Circuit requires of a conspiracy conviction, the

---

[16] *United States v. Anderson*, 417 U.S. 211, 223-24 (1974) (quoting *Direct Sales Co. v. United States*, 319 U.S. 703, 711 (1943)).

[17] *Id.* (quoting *Ingram v. United States*, 360 U.S. 672, 680 (1959)); *See generally Krulewitch v. United States*, 336 U.S. 440, 445–47 (1949) (Jackson, J., concurring) (describing conspiracy as an "elastic, sprawling and pervasive offense," as being "so vague that it almost defies definition," and as "chameleon-like [because it] takes on a special coloration from each of the many independent offenses on which it may be overlaid"); *Evans*, 970 F.2d at 674 (noting that it "may be time for the government to heed the admonition given by the Second Circuit in *United States v. Sperling*, 506 F.2d 1323, 1340–41 (2d Cir.1974)," that "we take this occasion to caution the government with respect to future prosecutions that it may be unnecessarily exposing itself to reversal by continuing the indictment format reflected in this case. While it is obviously impractical and inefficient for the government to try conspiracy cases one defendant at a time, it has become all too common for the government to bring indictments against a dozen or more defendants and endeavor to force as many of them as possible to trial in the same proceeding on the claim of a single conspiracy when the criminal acts could be more reasonably regarded as two or more conspiracies, perhaps with a link at the top.").

[18] *Evans*, 970 F.2d at 674.

[19] *Lopez*, 576 F.2d at 844.

Court should find that the government did not present the "clear and unequivocal evidence"[20] required to "scrupulously safeguard" Aubrey's right not to be convicted based on "loss of identity in the mass."[21]

**1.2    Evidence of a leadership role is insufficient.**

Aubrey had a leadership position, though accounts of what that position was differ.[22] The record demonstrates Aubrey didn't do much to exercise that position. As Stacey explained,[23]

```
13   Q.   Daniel Aubrey, what were his roles you observed in UNOI?
14   A.   When he was around -- when he was around, he just stood --
15   I know he was Royall's grandson that I was told at the time.
16   He was Royall's grandson.   And he was placed on a disciplinary
17   action, I think Class F, because whatever reason, I don't know.
```

Royall Jenkins considered Aubrey a troublemaker, and Royall instead relied on Kaaba Majeed like a son, because Kaaba didn't have to be watched as Aubrey did.[24]

---

[20] *Austin*, 786 F.2d at 988; *Anderson*, 981 F.2d at 1564.

[21] *Evans*, 970 F.2d at 668 (10th Cir. 1992).

[22] 386 (Amira); 857, 868 (Devon); 1111 (Elijah); 1467 (Maryum) ("Head of the men, but I don't remember him having a specific title"); 1628 (Doneika) (FOI leader); 2019 (Khalib) ("He was the supreme captain at one point.")

[23] 3447 (Stacey).

[24] 3531 (Leena Ramana).

The record confirms that Aubrey didn't follow Nation rules,[25] and was repeatedly put out.[26] Whatever leadership position Aubrey may have had, the Tenth Circuit has repeatedly held that evidence of a leadership position within an organization cannot prove membership in a conspiracy, even if that leadership position made the defendant aware of the conspiracy's objective.[27]

### 1.3    Evidence of association is insufficient.

Aubrey did "not become a participant in a conspiracy merely by associating with conspirators known to be involved in crime."[28] One "must agree to participate in

---

[25] 2262 (Etenia Kinard) (Aubrey drank alcohol); 2269 (Etenia Kinard) (Aubrey went out to eat without permission); 2421-22 (nightclubbing); 3032-3 (Jacelynn Greenwell) (Aubrey was "often in trouble with Royall").

[26] 589, 613, 830 (Amira); 871 (Devon); 1045 (Elijah); 1642 (Doneika); 2158 (Khalib); 2998 (Jacelynn Greenwell); 3641 (Myesha) ("Aubrey was, like, in and out of The Nation.")

[27] *United States v. Zimmerman*, 943 F.2d 1204, 1210 (10th Cir. 1991) ("We agree with Zimmerman that his position as the senior lawyer in the firm, standing by itself, cannot support a conspiracy conviction. Even if a reasonable jury could infer from the evidence that appellant's position in the firm gave him knowledge that a conspiracy was underway, knowledge of the conspiracy cannot be equated with participation."); *United States v. Migliacco*, 34 F.3d 1517, 1521-22 (10th Cir. 1994) ("The government offered no direct evidence of an agreement, relying instead on circumstantial evidence and suggested inferences. Its proof, however, that Defendants practiced medicine together, shared one billing system, assisted each other in surgery, and advertised heavily in the Lawton, Oklahoma area simply does not constitute facts upon which a reasonable juror could infer an agreement to commit mail fraud."); *United States v. Fox*, 902 F.2d 1508, 1514 (10th Cir. 1990) ("Mere association with conspirators, even with knowledge of their involvement in crime, is insufficient to prove participation in their conspiracy."); *Austin*, 786 F.2d at 989 (10th Cir. 1986) (Reversing conspiracy conviction where "[a]lthough Austin candidly testified that by March he had begun to suspect something illegal was going on, mere suspicion is not enough.").

[28] *United States v. Jones*, 44 F.3d 860, 866 (10th Cir. 1995) (internal citations omitted).

order to be convicted for conspiracy."[29] "A defendant's mere association with conspirators is not enough to support a conspiracy conviction."[30] Nor is the government's evidence that Aubrey conversed with charged co-conspirators sufficient as a matter of law to support the resulting conviction.[31]

## 1.4    The government presented no evidence of an agreement.

This record shows a complete lack of agreement between Aubrey and the other charged defendants.[32] Aubrey and his co-defendants were "competing rather than

---

[29] *Id.* ("It may be reasonable to infer from the evidence that Ms. Johnson suspected illegal activity. She flew from Detroit to Los Angeles on a one-way ticket, paid for with cash, presumably by someone else. And Ms. Johnson deferred to Ms. Jones' description of their travel plans and the contents of the trunk. Mere suspicion of illegal activity, however, is insufficient to prove participation in a conspiracy. One does not become a participant in a conspiracy merely by associating with conspirators known to be involved in crime.").

[30] *United States v. Austin*, 786 F.2d 986, 988 (10th Cir. 1986).

[31] *United States v. Dickey*, 736 F.2d 571, 584 (10th Cir. 1984) ("Even if we assume that Galvan and Reyes conversed, a more significant defect in the evidence is the government's failure to prove that the subject of their conversations was a criminal agreement."); *United States v. Galvan*, 693 F.2d 417, 420 (5th Cir. 1982) ("we agree that mere telephone calls between two parties fail to establish a conspiracy"); *Rahseparian*, 231 F.3d 1263 ("Importantly, although Mr. Russell testified he overheard the daily conversations between Ardie and Jack, he did not testify he ever heard anything incriminating said with respect to Jack. There is no evidence Jack was aware of the misrepresentations being made to customers, or that they were not receiving their products or promised prizes.").

[32] 4530 (Yanus Rassoul) (denying any kind of partnership with Aubrey); 4811 (Kaaba Majeed) (same); 4853 (Kaaba Majeed) (agreeing he had told law enforcement that "Aubrey hates me, I've kicked him out more than once"); 3952 (Rayshaun) (detailing how Kaaba Majeed and Rodney Hadley worked together to get Aubrey put out of the Nation); 1084 (Elijah) (detailing Kaaba punishing Aubrey with a fast for wearing a polo and gym shoes while on support raiser).

cooperating.[33] The Court must reverse Aubrey's conviction because the government

never proved that he and his co-defendants "ever agreed to work together on

anything."[34]

Nor could the jury reasonably infer an agreement. To "reasonably infer an

agreement the defendant's conduct must be interdependent with the conduct of

other conspirators. Interdependence requires more than casual transactions or mere

associations; the defendant's activities must facilitate the endeavors of other

conspirators or the venture as a whole."[35] Interdependence requires "proof that the

conspirators intended to act together for their shared mutual benefit within the

scope of the conspiracy charged."[36] The best the government can do is show that

Aubrey and his co-defendants were acting near each other, not with each other.

Because Aubrey and his co-defendants were competing, not cooperating, the Court

should vacate Aubrey's conviction.[37]

---

[33] *United States v. Caldwell*, 589 F.3d 1323, 1331 (10th Cir. 2009) (reversing conspiracy conviction where the alleged conspirators were "competing rather than cooperating").

[34] *Caldwell*, 589 F.3d at 1332, citing *United States v. Pressler*, 256 F.3d 144 (3d Cir. 2001) (reversing conspiracy conviction where the government did not show that the alleged co-conspirators "ever agreed to work together on anything.").

[35] *United States v. Arutunoff*, 1 F.3d 1112, 1116 (10th Cir. 1993); *United States v. Morehead*, 959 F.2d 1489, 1500 (10th Cir. 1992) (same); *Migliacco*, 34 F.3d at 1521-22 (internal citation omitted) ("At most, a reasonable juror might infer that one defendant had knowledge of the other's intent, but knowledge, by itself, is insufficient to create a conspiracy. We conclude, therefore, that the government failed to meet its burden of proof of an essential element of the crime of conspiracy.").

[36] *United States v. Heckard*, 238 F.3d 1222, 1231 (10th Cir. 2001).

[37] *United States v. Riggins*, 15 F.3d 992, 994 (10th Cir. 1994) ("we find a striking lack of evidence against Ms. Riggins. To prove its case against Ms. Riggins, the

**2.  The evidence preponderates heavily against the verdict and this Court should grant Mr. Aubrey Jenkins a new trial in the interest of justice under Rule 33.**

**2.1    Rule 33 and new trials based on this Court's weighing of evidence.**

Rule 33 authorizes this Court to "vacate any judgment and grant a new trial if the interest of justice so requires." The Eighth Circuit recently explained that when "making a new trial determination, the district court has much broader discretion [than it has when considering a Rule 29 motion] and may weigh the evidence, choose to believe or disbelieve witnesses, and may grant a new trial even where there is substantial evidence to sustain the verdict."[38] Of "great importance, the district court is not required to view the evidence in the light most favorable to the government when considering a new trial motion."[39]  The Tenth Circuit agrees.

---

government merely showed that she was in the van when Trooper Smith found the drugs, and that in the years prior to her arrest she had received some funds and an automobile from her mother who had previously been arrested for drug activity. Viewing this evidence in the light most favorable to the government, a reasonable jury could infer that Ms. Riggins knew her mother and sister were involved in drug activity. Even if the jury inferred that Ms. Riggins knew her mother and sister were hiding drugs in the van, that evidence is not sufficient to establish that Ms. Riggins knowingly and voluntarily became part of the conspiracy."); *Summers*, 414 F.3d at 1296 ("While evidence connected with the robbery was found near Mr. Summers, his proximity to the various funds and other items in the red Ford Escape, even coupled with his presence in Apartment 2013 prior to detention, is simply insufficient to permit a reasonable inference of his willful participation in the conspiracy absent some other showing.").

[38] *United States v. Lemoine*, 104 F.4th 679, 686-7 (8th Cir. 2024) (cleaned up); (quoting *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002)); *United States v. Autuori*, 212 F.3d 105, 120 (2d Cir. 2000) (When deciding a Rule 33 motion, "the court may weigh the evidence and credibility of witnesses.").

[39] *Lemoine*, 104 F.4th at 686 (quoting *United States v. De La Cruz Nava*, 80 F.4th 883, 889 (8th Cir. 2023)); *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980) (stating the issues in a motion for a new trial are "far different from those raised by a motion for judgment of acquittal[,]" as the question before the court is

When deciding a Rule 33 motion, "the court may weigh the evidence and consider the credibility of the witnesses and grant a new trial in exceptional cases where the evidence preponderates heavily against the verdict."[40]

Even if this Court does not acquit Aubrey under Rule 29, Aubrey presents the exceptional case where, even if legally sufficient, the "evidence preponderates heavily against the verdict," justifying a new trial under Rule 33.[41] The jury's verdict on Count One is against the weight of the evidence, and the Court should order a new trial.[42] We discuss the government's witnesses who purported to incriminate Aubrey below.

### 2.2    Elijah.

The "core of the government's case" was based on the testimony of Elijah, an "artful liar"[43] and the only putative victim charged in a substantive count against

---

not whether a "defendant should be acquitted outright, but only whether he should have a new trial").

[40] *United States v. Evans*, 42 F.3d 586, 593–94 (10th Cir. 1994) (quoting 3 C. Wright, *Federal Practice & Procedure*, § 553, at 248 (2d ed. 1982) (cleaned up)); *accord United States v. Brown*, 654 F. App'x 896, 907-08 (10th Cir. 2016) (restating standard but finding no error in denial of new trial).

[41] *United States v. Evans*, 42 F.3d 586, 593 (10th Cir. 1994).

[42] Compare *Hudson v. Louisiana*, 450 U.S. 40, 44 (1981) (Reversing conviction where the "trial judge granted the new trial because the State had failed to prove its case as a matter of law, not merely because he, as a '13th juror,' would have decided it differently from the other 12 jurors.") with *Tibbs v. Florida*, 457 U.S. 31, 42 (1982) (Citing *Hudson* in support of a retrial when "a judge disagrees with a jury's resolution of conflicting evidence and concludes that a guilty verdict is against the weight of the evidence.").

[43] *United States v. Autuori*, 212 F.3d 105, 120 (2nd Cir. 2000) (district court properly granted new trial where testimony of two main government witnesses was "dubious").

Aubrey. The record supports a finding by this Court that Elijah's testimony was "riddled with inconsistency and often contradicted by other government witnesses."[44] Important parts of his testimony were "contradicted by every other witness."[45] The Court should conclude that "the credibility of the principal witnesses was weak and that the soundness of the verdict is highly doubtful" and order a new trial.[46]

First, Elijah is not a truthful person, by opinion or reputation.[47] He claimed that Aubrey coordinated "chest cavities," where everyone at math class (100-200 people) would punch a person in the chest. No other government witness endorsed or corroborated that absurd statement.[48] Where "testimony is patently incredible or defies physical realities, it may be rejected by the court, despite the jury's evaluation."[49] Just so here.

---

[44] *Id.*

[45] *Id.*

[46] *Id.* at 1121; *United States v. Ferguson*, 246 F.3d 129, 133 (2d Cir. 2001) ("We review the decision of the district court to grant a new trial for abuse of discretion . . . we are mindful that a judge has not abused her discretion simply because she has made a different decision than we would have made in the first instance."); *United States v. LaVallee*, 439 F.3d 670, 700 (10th Cir. 2006) ("We review rulings on a motion under Rule 33 for an abuse of discretion.").

[47] 3951 (Rayshaun) (opinion and reputation); 3964 (Romella Jenkins) (opinion).

[48] 1047, 1048, 1130 (Elijah); 2423 (Etenia Kinard) ("Did you ever see anyone perform what's called a chest cavity as an action during math class? A. Not that I'm recalling right now."); 620 (Amira) (never saw physical punishment of any kind in math class). No other government witness endorsed Elijah's falsehoods about chest cavities.

[49] *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992).

Second, Elijah's incredible testimony about Aubrey's orchestration of a beatdown concerning Phillip justifies a new trial. Elijah testified that Aubrey explained why Phillip had received a beatdown, and testified that he observed Phillips's injuries.[50] Khalib directly contradicted that testimony, explaining that he witnessed a beatdown ordered by Kaaba motivated by a failure to defend Nation property.[51] The victim was Phillip.[52] Khalib was eight years old when he saw this beating, which meant it happened in the year 2000.[53] Elijah didn't arrive in Kansas City until 2002;[54] he couldn't have seen Phillips's injuries from Ohio.

Third, Elijah's prevarications about his disconnection from his family are central to his false narrative that he stayed in the Nation because he had no choice. Elijah testified that he left the Nation in 2011 after secretly creating a Facebook account and connecting with a cousin.[55] This, Elijah claimed, was the first time he had contact with family on the outside.[56] But Elijah was surrounded by his family in Kansas City; he stayed in the Nation because he wanted to, not because he was being forced to labor. Elijah's own mother refuted his claims that he didn't want to

---

[50] 1129 (Elijah)

[51] 1993 (Khalib)

[52] 2156 (Khalib)

[53] *Id*.

[54] 1256 (Elijah) ("When I was taken to Kansas, it was not 2001; it was 2002.").

[55] 1131-2 (Elijah)

[56] 1132 (Elijah)

move to Kansas City,[57] that he had no contact with family members while in the Nation,[58] and that he hated life in the Nation.[59]

| 21 | Q. | Okay. Did Elijah enjoy being in The Nation? |
| 22 | A. | He loved it, yes. |

### 2.3   Niesha.

This Court may easily find Niesha's testimony perjurious. A liar by opinion and reputation,[60] Niesha claimed that Rodney Hadley brutally assaulted Atim; that Atim was screaming and begging Rodney to stop;[61] that Atim "looked so bad: bleeding, his lip was busted, eye busted"; and that Neisha was "scared like we might not make it out of here alive."[62] Atim's testimony corrected the record:

---

[57] 4169 (Rhoda).

[58] 4169-4171 (Rhoda).

[59] 4171 (Rhoda).

[60] 3822-23 (Akiba).

[61] 2734 (Niesha).

[62] 2735 (Niesha).

```
12        A particular witness named Niesha K███ has testified about
13   a situation on one of the camping trips where you were
14   physically beaten by Rodney Hadley.
15        Do you recall that incident?
16   A.   No.
17   Q.   Did he ever physically touch you or beat you on a camping
18   trip?
19   A.   No.
20   Q.   Okay.  So that's absolutely a complete falsity?
21   A.   Yeah, that's false.
```

Niesha also alleged that Adam Winthrop denied her the use of an inhaler, confining her to Mr. Winthrop's home because she was not "able to even really much get down the steps[.]"[63] Niesha testified that her asthma attack "lasted for months,"[64] which is not something that happens.[65] And as Sharon Ballard Staton explained to the jury, Niesha had no issues with asthma.[66]

Finally, Niesha testified that Rodney and Aubrey attacked Khalib, averring that she listened to Khalib scream as he was beaten, and then observed the bloody

---

[63] 2765 (Niesha).

[64] 2772 (Niesha).

[65] American College of Allergy, Asthma, and Immunology, https://acaai.org/asthma/symptoms/asthma-attack/ ("The duration of an attack can vary, depending on what caused it and how long the airways have been inflamed. Mild episodes may last only a few minutes; more severe ones can last from hours to days.")

[66] 3872 (Sharon Ballard Staton)

aftermath.[67] But Niesha was unaware that Khalib had already testified[68] and that he had described nothing of the sort.[69]

### 2.4    Devon.

Devon testified that after stealing a salmon sandwich, he was brought in front of the math class, taken outside around the corner,[70] and dangled off a bridge over some train tracks by Aubrey and Rodney. Devon testified that incident occurred when he was 12 or 13 years old.[71] After the incident concluded, Devon testified that he was paddled.[72] He also related that the incident happened a long time ago, and that he would not "know all the details[.]"[73] Devon further testified that "I honestly don't remember the timeline to be certain . . . everything ran together and I really don't – don't really know."[74]

Devon had two interviews with the FBI, one in August 2021 and one in March 2024.[75] In the August 2021 interview, he told the salmon sandwich story about being brought to the front of math class, taken outside, and dangled off a bridge

---

[67] 2743 (Niesha).

[68] 2885 (Niesha).

[69] 2156 (Khalib).

[70] 881 (Devon); 3521 (Leena Ramana).

[71] 881 (Devon)

[72] 882 (Devon)

[73] 940 (Devon)

[74] 944 (Devon)

[75] 942 (Devon)

over train tracks, and explained that the incident had happened in Kansas.[76] But as Agent Ramana confirmed when reviewing defense exhibits 5032 and 5033, there are no bridges or train tracks near either location where math classes met in Kansas.[77] Agent Ramana also confirmed that Devon had told her that the bridge incident had occurred when Devon was nine years old, and that the punishment for that incident was that Devon was put on a fast.[78] In sum, Devon's prior statements were that the bridge incident occurred in Kansas, that he was nine years old when it happened, and that the resulting punishment was a fast. His trial testimony was that the incident occurred in Maryland, that he was twelve or thirteen years old, and that the punishment was paddling.

In either case, Devon's testimony cannot support Aubrey's conspiracy conviction for four reasons. First, if his prior statement is to be believed, Devon was nine years old when this incident happened. Devon was born in 1990,[79] so if he was nine when allegedly hung over a bridge the conduct predated both the dates of the conspiracy alleged in the indictment and the existence of the forced labor statute and cannot support any conviction. Second, Agent Ramana's testimony confirmed that there are no bridges or railroad tracks anywhere "around the corner" from either location in Kansas where math classes were held. Third, the diametric differences between

---

[76] 943 (Devon) (Devon testified he did not remember making the statement about Kansas in 2021.).

[77] 3523-24 (Leena Ramana).

[78] 3525 (Leena Ramana).

[79] 844 (Devon).

Devon's pretrial statements and his trial testimony severely undermine his credibility. Fourth, government witness Shakira directly contradicted Devon's account. She testified that she was present when Devon was escorted to the front of math class for stealing food.[80] Shakira explained that Devon was not taken outside, and Devon was not dangled off a bridge over train tracks.[81] Rather:

```
6    Q.  And this was the situation you talked about about stealing
7    food?
8    A.  Yes.
9    Q.  Do you remember what happened after that?
10   A.  Not -- I just remember that he was put on a disciplinary
11   action, and that's it.
```

### 2.5    Etenia Kinard.

Ms. Kinard is a cooperating co-defendant, so her testimony is "open to question."[82] Ms. Kinard testified to a number of events corroborated by no other government witness or controverted by all witnesses that testified concerning the topic. She described abrasions on Aubrey's hands[83] and a fight initiated by some

---

[80] 2658-9 (Shakira).

[81] 2659 (Shakira).

[82] *United States v. Starks*, 34 F.4th 1142, 1168 (10th Cir. 2022); *United States v. Chavez*, 976 F.3d 1178, 1212 (10th Cir. 2020) (same).

[83] 2327 (Etenia Kinard)

unknown person wearing a Halloween mask and joined by other unknown people.[84]

No other witness did so. She also admitted that, after four prior extended interviews with the FBI in which she was incentivized to disclose anything she knew, Ms. Kinard transposed the statements she made concerning Rodney Hadley to Aubrey.[85]

```
23   Q.  What you did was, in your testimony, you took your verbal
24       description of Rodney to the FBI on the 18th and applied it on
25       the stand to Aubrey.
```

```
1    A.  Yes, sir.
```

Ms. Kinard also claimed, contrary to every other witness in the trial who testified about the topic, that Aubrey returned to the Nation before 2012.[86] But the testimony, aside from Ms. Kinard, was overwhelming that after Aubrey left the Nation in 2008, he never came back.[87] Royall Jenkins warned Nation members that they were to have nothing to do with Aubrey.[88] Kaaba Majeed and Yunus Rassoul

---

[84] 2328 (Etenia Kinard). Ms. Kinard's statements concerning this allegation significantly evolved from her statements to the FBI to her testimony. 2419-20.

[85] 2413-14 (Etenia Kinard).

[86] 2332, 2425 (Etenia Kinard) (Aubrey returned "a few months later.")

[87] 614 (Amira); 4530 (Yanus Rassoul).

[88] 1726 (Doneika).

testified that Ms. Kinard was lying when she testified that Aubrey returned shortly after leaving the Nation.[89] As Kaaba explained,

```
11   Q.   You heard Ms. Kinard's testimony that Aubrey was back in
12   The Nation within a couple months?
13   A.   Literally impossible.  Royall was not the type of person to
14   be made to look bad.  He was very concerned with his image.
15   After he made his speech about Aubrey, and I knew this, that,
16   and the other, there's no way that he would have allowed Aubrey
17   to come back any time soon because it would have made him look
18   like he just made up a whole bunch of stuff and he didn't
19   really mean what he said.  So that had less to do with Aubrey
20   and more to do with Royall.  That's not possible.
```

Aubrey's acquittal on the substantive count demonstrates that this was a close case.[90] On this record, the "credibility of the principal witnesses was weak and the soundness of the verdict is highly doubtful."[91]

It's a matter of record that a number of the government's primary witnesses perjured themselves; we challenge the government to present a principled argument

---

[89] 4530 (Yunus Rassoul); 4812 (Kaaba Majeed).

[90] *United States v. Starks*, 34 F.4th 1142, 1168 (10th Cir. 2022) (jury's inability to reach a verdict concerning drug-conspiracy charge while convicting defendant of related possession counts "suggests that this was a close case for the jury—or, at the very least, that the evidence regarding his counts of conviction was not overwhelming—because that evidence was not 'substantially different' from the evidence the government used to prove up the conspiracy charge" (discussing cases)).

[91] *Autuori*, 212 F.3d at 121.

that Elijah, Niesha, Devon, and Etenia Kinard told the truth, the whole truth, and

nothing but the truth. If the government doesn't, and we don't think it will, this

Court should reverse Aubrey's conviction and grant him a new trial in the interest

of justice under Rule 33.

Respectfully submitted,

s/ Kirk Redmond
KIRK REDMOND, #18914
First Assistant Federal Public
Defender 500 State Avenue, Suite 201
Kansas City, Kansas 66101
913-551-6712
Fax: 913-551-6562
Email: Kirk_Redmond@fd.org
Attorney for Aubrey Jenkins (05)

s/ Ellen Albritton
ELLEN ALBRITTON, Sup. Ct. No. 28978
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
316-269-6170
Fax: 316-269-6175
Email: Ellen_Albritton@fd.org
Attorney for Aubrey Jenkins (05)

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2024, I electronically filed the foregoing
with the Clerk of the Court by using the CM/ECF system, which will send a notice
of electronic filing to all interested parties.

s/Kirk C. Redmond
Kirk C. Redmond #18914